# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PATRICK B. BELL** | * | **CIVIL ACTION NO.** |
| | * | |
| **v.** | * | **3:01CV1961 (EBB)** |
| | * | |
| **STOP & SHOP SUPERMARKET** | * | |
| **COMPANY** | * | |
| | * | |
| | | **NOVEMBER 18, 2003** |

## PLAINTIFF'S TRIAL MEMORANDUM

Pursuant to the Court's Pre-Trial Order dated August 27, 2003, the Plaintiff, Patrick B.

Bell, hereby respectfully submits his Trial Memorandum.

### PLAINTIFF'S TRIAL COUNSEL:

Morris J. Busca
*Fed. Bar No.: ct20200*
Gesmonde, Pietrosimone
     & Sgrignari, L.L.C.
3127 Whitney Avenue
Hamden, Connecticut 06518-2344
203-407-4200
mbusca@gpsp.com

Krista A. Dotson
*Fed. Bar No.: ct24368*
Gesmonde, Pietrosimone
     & Sgrignari, L.L.C.
3127 Whitney Avenue
Hamden, Connecticut 06518-2344
203-407-4200
kdotson@gpsp.com

## JURISDICTION

This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §2000e-5. The jurisdiction of this court is invoked under 28 U.S.C.

§§ 1331 and 1367.

1

**BRIEF SUMMARY OF CASE**

Mr. Bell, an African-American, was surprised on September 1, 2000, when his supervisors unfairly terminated him for sleeping on the job, which is referred to as "stealing time" by Stop & Shop, Inc., because he had momentarily closed his eyes, but was not sleeping. He was more surprised that the company refused to extend to him, an eleven-year employee, a suspension without pay in lieu of termination, which had been offered to similarly situated Caucasian employees who had been terminated for stealing time.

On October 17, 2001, Patrick B. Bell ("Mr. Bell") filed a one-count complaint alleging discriminatory retaliation, discrimination and termination on account of his African-American race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

Mr. Bell was hired by the defendant Stop and Shop, Inc. on October 29, 1989 as a "selector" or warehouse worker, but was later promoted to fork-lift operator in one of the two warehouses. He held that position, until his unlawful termination on September 1, 2000, for allegedly stealing time, which is categorized as a terminable offense by the defendant.

Mr. Bell intends to introduce evidence of hostile relationship with his supervisor, Curtis Miller, based upon his prior collective bargaining grievance against Mr. Miller in which he alleges racial discrimination. Although Mr. Bell had received permission from a different supervisor, he received a warning from Mr. Miller for unauthorized absence from his workplace. Mr. Bell's union failed to investigate or prosecute his grievance.

On September 1, 2000, Mr. Bell was terminated by Mr. Miller and another supervisor, Robert Roddy, for allegedly sleeping on the job. Mr. Bell maintains that, after he stopped his

2

fork-lift to wait on other employees working in the aisle, he momentarily closed his eyes, but he was not sleeping.

Mr. Bell intends to introduce evidence of disparate treatment with regard to the defendant's inconsistent application and enforcement of its shop rules prohibiting "stealing time." Specifically, similarly situated Caucasian employees who have been terminated for the same offense have been reinstated by the defendant with the lesser discipline of suspension. Mr. Bell also intends to introduce evidence that a similarly situated Caucasian employee terminated for the more egregious offense of consuming alcohol on the defendant's property similarly has been reinstated with the lesser discipline of suspension.


## PLAINTIFF'S PROPOSED VOIR DIRE

### Questions about employment

- Have you, or someone close to you, ever worked for Stop and Shop, Inc.?

- Do you, or someone close to you, own shares of Stop & Shop stock?

- How do you feel about a person who brings a civil lawsuit to resolve a dispute involving his employment termination?

- What obligations does an employee owe an employer?

- What obligations does an employer owe an employee?

- What are your views of the civil justice system and a jury's right to hear and decide discrimination cases?

- Have you, or someone close to you, ever had hiring or firing authority or supervisory authority over other employees?

3

- Have you, or someone close to you, ever been terminated from work or disciplined?

  Was it fair or unfair?

- Have you, or someone close to you, ever filed a grievance or made a complaint against someone or about something at work?  What did it involve?  What was the outcome?

- In a case involving a dispute between a supervisor and an employee, do you have any tendency to believe or find more credible the employee or the supervisor?

- Have you, or someone close to you, ever been accused of employment discrimination or violating an employee's rights?

- Have you, or someone close to you, ever been accused of racial harassment or racial discrimination?

## Questions about stereotypes

- Have you ever personally observed racial harassment or discrimination in any public or private place or in any workplace?

- Have you ever been in a situation where you felt racial tension--in a store, your neighborhood, or anywhere else?

- Have you ever been or felt threatened (physically or otherwise) by a person of another race?

- Do you think that most African Americans are less intellectual than other people?

- Do you think that most African Americans are more conscious of the occurrence of prejudicial acts than non-minority people?

4

**Questions about awards**

- Would you have any difficulty or concerns about awarding a substantial monetary verdict, if the evidence in the case warranted returning such a verdict?

- Would you have any difficulty or concerns about awarding punitive damages to the Plaintiff, if the evidence demonstrates that the Defendant was recklessly indifferent to the federal rights of the Plaintiff?

**PLAINTIFF'S LIST OF WITNESSES**

1. Patrick B. Bell

2. Marshaun Bell

3. Patrina Bell

4. Shauntay Bell

5. Edward Ruddy, Director of Distribution

6. Curt Miller, Operations Manager

7. Robert Roddy, Supervisor

8. Frank Zappone, Supervisor

9. Kevin Langley

10. Michael Hasty

10. Richard Cruz

11. Yaroslaw ("Jerry") Daniw

12. Francis Wright

13. Albert Lindsay

14. Anthony Milano, Jr.

15. Massimo Palma

16. Gary Pawlowicz

17. Thomas Rascatti

18. Daryl Smith

19. Arthur Mongillo

Additionally, Plaintiff reserves the right to call the following:

rebuttal witnesses;
impeachment witnesses; and all
witnesses listed by the Defendant.

## PLAINTIFF'S EXHIBITS

1. Bell date of hire form, dated October 29, 1989.

2. "191" warning of Bell of September 21, 1997, incorrectly dated September 21, 1995.

3. Bell grievance regarding September 21, 1997 warning.

4. Bell transfer form to Grocery Distribution Center, dated January 4, 1998.

5. Bell time sheet, dated September 1, 2000.

6. Summary of Daily Productivity, dated September 1, 2000.

7. Stop & Shop Supermarket Company organizational chart.

8. Stop & Shop Grocery Distribution Center Shop Rules.

9. Stop & Shop Anti-Harassment Policy.

10. Stop & Shop Equal Employment Opportunity Policy.

6

11.    Collective Bargaining Agreement between Stop & Shop Supermarket Company and Teamsters Union, Local 443, International Brotherhood of Teamsters, effective April 6, 1997 to April 5, 2003.

12.    Memorandum of Agreement between Teamster Local 443, International Brotherhood of Teamsters and Stop & Shop Supermarket Company, dated August 11, 2003, concerning modifications for new collective bargaining agreement effective April 6, 2003 to April 3, 2010.

13.    Termination form of Bell, dated September 1, 2000.

14.    Memorandum of Curtis Miller to P. Bright regarding termination of Bell, dated September 1, 2000.

15.    Deposition transcript of Curtis Miller, taken on January 8, 2003.

16.    Memorandum of Robert Roddy, dated September 1, 2000.

17.    Form regarding September 7, 2000 hearing on Bell termination, dated September 7, 2000.

18.    Form regarding September 14, 2000 hearing on Bell termination, dated September 14, 2000.

19.    Memorandum of Edward Ruddy regarding September 14, 2000 hearing on Bell termination, dated September 14, 2000.

20.    Termination form of Bell, dated September 14, 2000.

21.    Termination form of Richard Cruz, dated May 15, 1998.

22.    Memorandum of Frank Zappone & Bill Johnson regarding Richard Cruz, dated May 15, 1998.

23.    Suspension form of Richard Cruz, dated May 28, 1998.

24.    Termination form of Yaroslaw Daniw, dated September 10, 2002.

25.    Suspension form of Yaroslaw Daniw, dated September 20, 2002.

26.    Termination form of Albert Lindsay, dated May 6, 2002.

27.    Suspension form of Albert Lindsay, dated May 20, 2002.

28.    Termination form of Anthony Milano, Jr., dated June 25, 2001.

29.    Suspension form of Anthony Milano, Jr., dated July 12, 2001.

30.    Memorandum of Edward Ruddy regarding suspension of Massimo Palma, dated January 17, 1997.

31.    Warning "191" form of Thomas Rascatti, dated August 28, 1990.

32.    Warning form of Thomas Rascatti, dated January 28, 1993.

33.    Suspension form of Thomas Rascatti, dated February 8, 1993.

34.    Suspension form of Daryl Smith, dated December 6, 1995.

35.    Suspension form of Arthur Mongillo, dated December 8, 1994.


**DEPOSITION DESIGNATIONS**

Plaintiff expects to call Operations Manager Curt Miller to testify at trial. Therefore, he is not expected to testify by deposition at trial.


**PROPOSED JURY INSTRUCTIONS**

See attached.

**INTERROGATORIES FOR SPECIAL VERDICT FORMS**

See attached.

8

Respectfully submitted.

**PLAINTIFF, PATRICK B. BELL**

By: _____
    Morris J. Busca (ct 20200)
        Gesmonde, Pietrosimone & Sgrignari L.L.C.
        3127 Whitney Avenue
        Hamden, CT 06518-2344
        (203) 407-4200


## CERTIFICATION

This is to certify that a copy of the foregoing Plaintiff's Trial Memorandum was mailed, via first class, postage prepaid, this 18th day of November, 2003, to Lynn A. Kappelman, Esq., Seyfarth Shaw, Two Seaport Lane, Suite 300, Boston, Massachusetts 02210-2028.


_____
Morris J. Busca

9

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICK B. BELL | * | CIVIL ACTION NO. |
| | * | |
| v. | * | 3:01CV1961 (EBB) |
| | * | |
| STOP & SHOP SUPERMARKET | * | |
| COMPANY | * | |
| | * | NOVEMBER 18, 2003 |

## PLAINTIFF'S PROPOSED REQUESTS
## FOR THE JURY CHARGE

Pursuant to Rule 51 of the Federal Rules of Civil Procedure, plaintiff, Patrick B. Bell, respectfully requests that the Court instruct the jury on the law of this case and submit to the jury special verdict forms as attached.

PLAINTIFF, PATRICK B. BELL

By: _____
Morris J. Busca (ct 20200)
Gesmonde, Pietrosimone & Sgrignari L.L.C.
3127 Whitney Avenue
Hamden, CT 06518-2344
(203) 407-4200

## DISCRIMINATORY TREATMENT UNDER TITLE VII, 42 U.S.C. §2000e

In this case, the plaintiff's complaint sets out certain facts upon which he has based his claims. Those claims are based upon legal theories which I will explain to you now. As jurors, it is your duty to consider the facts as you find them in light of these different principles of law.

Equal employment opportunity law is derived from many overlapping federal, state and local statutes that impose obligations on employers regarding nondiscriminatory treatment of employees and job applicants based on race, color, sex, national origin, citizenship, religion, age, handicap, marital status or veteran status.

The law to be applied to the plaintiff's claims in this case is the federal civil rights law called "Title VII," which gives a remedy to individuals who have been deprived of their rights to be free in employment from discrimination on the basis of race.

Title VII or section 2000e-2 of Title 42 of the United States Code states:

It shall be an unlawful employment practice for an employer -

(1)    to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. *42 U.S.C. §2000e-2.*

"An unlawful employment practice" includes any situation in which a protected characteristic, such as race, color, religion, sex or national origin, was a "motivating factor" in an employment action, even if there were other motives. *Costa v. Desert Palace, Inc.,* 299 F.3d 838,

1

848 (9th Cir. 2002), *aff'd., Desert Palace, Inc. v. Costa*, 2003 U.S. LEXIS 4422 (U.S. June 9, 2003).

In this case, the plaintiff claims that his race was a factor in the decision to discharge him for stealing time on the job. In this discriminatory treatment case, the plaintiff must prove through direct or circumstantial evidence the following: (1) he was within a protected group because of his race; (2) he was qualified for the position of fork-lift driver; (3) he was discharged; (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Burger v. New York Inst. Of Tech.*, 94 F.3d 830, 833 (2nd Cir. 1996).

In order for a plaintiff to bring his claim under Title VII into this court, he must have filed a complaint of discrimination with the Connecticut Commission on Human Rights and Opportunities or the federal Equal Employment Opportunity Commission within 180 days or 300 days, respectively, from the date of the acts complained of. *42 U.S.C. §2000e-5; 29 C.F.R. §1601.13.* I instruct you that, as a matter of law, the plaintiff has satisfied this requirement.

Further, in order for the plaintiff to bring this action to this court, he must obtain a Notice of Right to Sue from the Equal Employment Opportunity Commission and file his civil action within 90 days of receipt of that notice. *42 U.S.C. §2000e-5(f)(1).* I instruct you, as a matter of law, that the Plaintiff has satisfied this prerequisite to your consideration of his claims.

### RETALIATION UNDER TITLE VII

The plaintiff in this case also claims that Stop & Shop retaliated against him in violation of Title VII. Title VII prohibits discrimination against any applicant or employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." *42 U.S.C. §2000 2-*

2

*3(a)*. Therefore, an employee may not be discharged or disciplined because he or she has made a verbal or internal complaint to supervisors, filed complaints with civil rights groups or unions, circulated petitions, made statements to the media, or engaged in other forms of lawful "opposition," so long as the employee has a "good faith, reasonable belief" that the underlying employment practice was unlawful under Title VII. *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996).

Title VII is violated if a retaliation is a motivating or substantial factor in the adverse employment action even if it was not the sole cause. *Calabritto v. Dillon*, 107 F.3d 2 (2d Cir. 1990); *Fields v. New York State Office of Mental Retardation*, 115 F.3d 116 (2d Cir. 1997).

That means that, even if objectively valid grounds for the plaintiff's discharge might exist, Title VII is still violated as long as the defendant was motivated by a retaliatory feeling or animus. *Calabritto v. Dillon*, 107 F.3d 2 (2d Cir. 1990); *Fields v. New York State Office of Mental Retardation, supra.*

A plaintiff claiming retaliation in violation of Title VII must show: (1) that he participated in an activity protected by Title VII; (2) that the defendant knew of the protected activity; (3) that he suffered an adverse employment action; and (4) that there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998).

The plaintiff has provided evidence that he filed a grievance with his union in which he alleged that the disciplinary warning he received from Curt Miller for being out of his work area was discriminatory based upon his race. The plaintiff is entitled to prevail if you find that his

3

discharge was motivated, even in part, by retaliation for filing his grievance. *Cabrera v. Jakabovitz,* 24 F.3d 372, 382 (2d Cir. 1994).

## INDIRECT PROOF OF DISCRIMINATION

In discrimination cases, it is often difficult, if not impossible, for a plaintiff to produce direct evidence of discrimination. This is not because discrimination seldom occurs; it is because employers rarely admit that they are discriminating on the basis of race, or that they retaliate against employees who bring race-based complaints against them. Because of this difficulty of proof, an employee, such as the plaintiff in this case, must often rely on indirect or circumstantial evidence to prove discrimination. Indirect evidence of illegal discrimination includes proof of a set of circumstances that allows you, the jury, to reasonably believe that race was a factor that made a difference in the defendant's treatment of Patrick Bell. Relying upon circumstantial evidence as indirect proof of discrimination is just as reliable as direct evidence in order to prove discrimination by a preponderance of the evidence.

Disbelief of the defendant's explanation for the termination of Patrick Bell, or that Mr. Bell was treated differently than other Stop & Shop workers because of his race, are forms of circumstantial evidence that may prove intentional discrimination. You are permitted to conclude that the defendant unlawfully discriminated if you believe that the plaintiff proved that he was treated differently from other workers with respect to the company's policy against "stealing time" and that his race was a factor in such treatment. You are also permitted to conclude that the defendant unlawfully discriminated if you disbelieve the defendant's explanation for Mr. Bell's termination that he was sleeping on the job, or that its stated practice is to discharge each and

4

every employee who steals time regardless of that employee's race. *Reeves v. Sanderson Plumbing Products, Ind.,* 120 S.Ct. (2000); *St. Mary's Honor Center v. Hicks,* 113 S.Ct. 2742, 2746-47 (1993); *Gordon v. New York City Board of Education,* 2000 WL 1658156 (2d Cir. 2000).

## PLAINTIFF'S BURDEN OF PROOF

In civil actions such as this one, each plaintiff bears the burden of proving his claims by a preponderance of the evidence. The burden of proof in civil cases is different from the burden of proof in criminal cases. In criminal cases, the burden of proof is proof beyond a reasonable doubt. That is not the standard in this case. In this case, the burden of proof is proof by a preponderance of the evidence.

To prove by a preponderance of the evidence means to prove that something is more likely true than not true. If the plaintiff proves a fact by a preponderance of the evidence, that means the evidence he has presented has more convincing force than the opposing evidence and produces in your minds a belief that what is sought to be proved is more likely true than not true.

In this Title VII case claiming racial discrimination and retaliation, you, the jury, should simply decide whether the plaintiff proved that it is more likely than not that he was subjected to the adverse employment actions of retaliation and termination based on an illegal discriminatory motive. *Desert Palace Inc. v. Costa,* 123 S.Ct. 2148 (2003); *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097 (2000); *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47 (2nd Cir. 1998).

5

## PRETEXT FOR DISCRIMINATION

If you find that the plaintiff has proven that he was in a protected status because of his race and suffered the adverse employment action of termination, you must consider the defendant's reason for terminating him. If you find that the defendant's explanation for terminating Patrick Bell is not worthy of belief, in other words, a pretext, then you my properly find intentional discrimination was the actual motive. Intentional discrimination may be found either because of your disbelief of the reason put forth by the defendant, or by the plaintiff persuading you that a discriminatory reason more likely than not motivated the defendant to terminate Mr. Bell. You need not find that race was the only reason for the termination of Patrick Bell. It is enough to find that the plaintiff's race was a factor in the decision to terminate him. *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097 (2000); *Gallo v. Prudential Residential Services, Ltd.,* 22 F.3d 1219 (2nd Cir. 1994); *Cabrera v. Jakabovitz,* 24 F.3d 372 (2nd Cir. 1994).

## WEIGHING THE EVIDENCE

The credibility of witnesses and the weight to be given to their testimony are matters which are solely within your function to determine. A juror should use all of his or her experience and knowledge of the motives and interests which influence testimony and the evidence to arrive at a verdict. A juror who does not do so would be remiss in his or her duty.

If you believe the testimony of a single witness, you are entitled to base your verdict upon such testimony, even if that witness stands alone in his or her testimony as opposed to that of others. The weight of the evidence is not determined by the number of witnesses for or against

any one proposition. It is the quality, not the quantity, of witnesses and testimony that is important.

The credibility of the witnesses who appear before you is a matter for your sole consideration and determination. You have observed them in court upon the witness stand, under direct examination and under cross-examination. You should make full use of the results of your observations in determining the credibility of witnesses, and attach such weight to their testimony as you find credible. In determining the question of credibility of the witnesses, that is, the weight that you will give to their testimony, you should size them up, as it were, and make use of your everyday experiences in life. *Anderson v. City of Bessemer,* 470 U.S. 564 (1985); *Schmitz v. St. Regis Paper Co.,* 811 F.2d 131 (2nd Cir. 1987).


## DAMAGES

If the plaintiff has proven his claims against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I am giving instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages, only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages.

7

Individuals who suffer Title VII violations are entitled to be made whole for injuries suffered on account of the defendant's unlawful employment discrimination. *42 U.S.C.A. §2000e-5(g); Abermarle Paper Co. v. Moody,* 422 U.S. 405, 418, 45 L.Ed.2d 280, 95 S.Ct. 2362 (1975).


### COMPENSATORY DAMAGES

If you find a violation of Title VII, the plaintiff is entitled to damages called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole - that is, to compensate the plaintiff for the damage that the plaintiff incurred because of his termination. *Abermarle Paper Co. v. Moody,* 422 U.S. 405, 418, 45 L.Ed.2d 280, 95 S.Ct. 2362 (1975).

Compensatory damages are not limited to expenses that the plaintiff may have incurred because of his termination. If the plaintiff wins, he is entitled to compensatory damages for any lost wages, and for mental anguish or emotional distress, including humiliation, embarrassment, anxiety, depression, sleeplessness and loss of enjoyment of life, if any, that he has suffered because of the defendant's conduct. *42 U.S.C.A. §2000e-5(g); 42 U.S.C.A. §1981a(a)(1).*

The compensatory damages that you may award must be fair compensation for all of the plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant.

With respect to the plaintiff's entitlement to lost earnings for violations of his right to be free from discrimination and/or retaliation in employment, the defendant has the burden to demonstrate that the plaintiff, upon his termination, did not make reasonable efforts to mitigate or

8

reduce his damages by securing other employment.  The defendant has not met this burden and, therefore, I instruct you, as a matter of law, that the plaintiff made reasonable efforts to find work. *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228 (7th Cir. 1986).

In calculating the plaintiff's entitlement to lost wages, or back pay, the plaintiff is entitled to be reimbursed for the loss of earnings he suffered as the result of his termination from the time he was terminated, September 1, 2000, until the present date.  In addition, if you find that the plaintiff's earning capacity has been diminished as a result of his termination, then you should award him future lost earnings or front pay.  Such front pay should be calculated by comparing his probable earning capacity now, and the earning capacity he would have enjoyed had his employment not been terminated.  *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2nd Cir. 1993); *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1297 (7th Cir. 1987); *Modern Federal Jury Instructions,* Instruction 77-3, Sand, Siffert, Reiss, Sexton and Throp.

If you should find that the plaintiff is entitled to an award for future loss of earning capacity, then you must ascertain the present worth in dollars of such future damages, since the award of future damages necessarily requires that payment be made now for a loss that will actually not be sustained until some future date.

In order to make a reasonable adjustment for the present use, interest-free, of money representing a lump sum payment of anticipated future loss, you should discount, or reduce to its present worth, the amount of the anticipated future loss by taking (1) the interest rate or return which the plaintiff would reasonably expect to receive on the investment of a lump sum payment, together with (2) the period of time over which the future loss, whatever that amount, would reasonably be certain to earn or return if invested at such a rate of interest over such a period of

9

time.  Then you should include in your verdict an award for the present worth of the total anticipated future loss.

Similarly, in calculating the plaintiff's lost earnings from the date of his termination in 2000 to date, you should include an award of interest, so as to compensate the plaintiff for his loss of use of money he would have earned over time.  *Modern Federal Jury Instructions,* Instruction 77-3, Sand, Siffert, Reiss, Sexton and Throp.

If you find that the plaintiff is entitled to damages, but find that the amount of those damages is uncertain, due to the wrongful conduct of the defendant, you should nevertheless attempt to determine the amount of money damages due to the plaintiff which will fairly compensate him for any losses.  Title VII plaintiffs are not barred from an award of substantial compensatory damages, just because the monetary damage of a particular injury is difficult to ascertain.  Once a plaintiff has been damaged, he or she need only demonstrate the amount of damages with reasonable certainty, and a wrongdoer has no right to insist on a mathematically precise evaluation of the damages suffered.  *Schanzer et al. v. United Technologies Corp.,* Civil No. 3:98CV00834 (D. Conn. 2000).

I have said that, if you return a verdict for the plaintiff, you must award him such sum of money as you believe will fairly and justly compensate him for any injury you believe he actually sustained as a direct result of the conduct of the defendant.  If you find that the defendant did in fact violate more than one of the plaintiff's rights, you must remember, in calculating the damages, that the plaintiff is entitled to be compensated only for injuries he actually suffered.  Thus, if the defendant violated one of those rights, you should award an amount of compensatory damages no greater than you would award if the defendant had violated only one of the plaintiff's

10

rights. If, on the other hand, the defendant violated more than one of the plaintiff's rights and you can identify separate injuries resulting from the separate violations, you should award an amount of compensatory damages equal to the total of the damages you believe will fairly and justly compensate the plaintiff for the separate injuries he has suffered. *Puleri v. Fox,* Civil No. H-82-550 (D. Conn. 1987).


## PUNITIVE DAMAGES

Independent of compensatory damages, Title VII allows a plaintiff to recover punitive damages against a defendant that has engaged in intentional discrimination. An award of compensatory damages is not a requirement for an award of punitive damages in Title VII cases. *42 U.S.C.A. §1981a(a)(1); Cush-Crawford v. Adchem Corp.,* 271 F.3d 352 (2nd Cir. 2001).

Punitive damages may be awarded if you find the plaintiff has proven that the defendant has engaged in intentional discrimination and has done so with malice or reckless indifference to the federally protected rights of the plaintiff. *42 U.S.C.A. §1981a(b)(1); Kolstad v. American Dental Ass'n.,* 527 U.S. 526, 529-30 (1999). There is no requirement that the defendant's conduct be extraordinarily egregious or outrageous. *Luciano v. Olsten Corp.,* 109 F.3d 111 (2nd Cir. 1997). The terms "malice" and "reckless indifference" refer not to the defendant's awareness that it is engaging in discrimination, but its knowledge of the law and that it may be acting in violation of the law. *Kolstad v. American Dental Ass'n.,* 527 U.S. 526, 538 (1999).

If you find that punitive damages are merited, you should award the plaintiff the sum of money which will be adequate to punish the defendant for their illegal conduct and deter them and others from similar conduct in the future.

11

## PROPOSED INTERROGATORIES FOR
## SPECIAL VERDICT FORMS

Do you find from a preponderance of the evidence:

1.    That plaintiff Patrick Bell was discharged from employment by the defendant Stop & Shop?

      ANSWER:    YES ___ or NO ___

NOTE:        IF YOU ANSWERED "NO" YOU NEED NOT ANSWER THE REMAINING

             QUESTIONS.

2.    That the defendant Stop & Shop failed to strictly enforce its policy of discharging each and every employee who sleeps on the job or "steals time"?

      ANSWER:    YES ___ or NO ___

3.    That the plaintiff Patrick Bell's race was a factor in the decision to terminate him?

      ANSWER:    YES ___ or NO ___

12

4.   That the defendant Stop & Shop was motivated to terminate the plaintiff Patrick Bell

because he filed a grievance claiming the warning he received for being out of his work

area was discriminatory in nature?

ANSWER:     YES \_\_\_ or NO \_\_\_


NOTE:       IF YOU ANSWERED "NO" TO BOTH QUESTION NO. 3 AND QUESTION

NO. 4, YOU NEED NOT ANSWER THE REMAINING QUESTIONS.  IF YOU

ANSWERED "YES" TO BOTH QUESTION NO. 3 AND QUESTION NO. 4,

OR IF YOU ANSWERED "YES" TO ONLY ONE OF THOSE QUESTIONS,

ANSWER THE REMAINING QUESTIONS.


5.   That plaintiff Patrick Bell should be awarded damages to compensate for lost wages?

ANSWER:     YES \_\_\_ or NO \_\_\_

If your answer is "YES," in what amount?          $_____


6.   That plaintiff Patrick Bell should be awarded damages to compensate for future lost

earnings or front pay?

ANSWER:     YES \_\_\_ or NO \_\_\_

If your answer is "YES," in what amount?          $_____


13

7.  That plaintiff Patrick Bell should be awarded damages to compensate for mental anguish or emotional distress?

ANSWER:     YES ___ or NO ___


If your answer is "YES," in what amount?                    $_____


8.  That the defendant Stop & Shop acted with malice or reckless indifference to the plaintiff's federally protected rights under Title VII?

ANSWER:     YES ___ or NO ___


If your answer is "YES," what amount of punitive damages should be assessed against the defendant Stop & Shop?                    $_____


14

## CERTIFICATION

This is to certify that a copy of the foregoing Plaintiff's Proposed Requests For The Jury Charge was mailed, via first class, postage prepaid, this 18th day of November, 2003, to Lynn A. Kappelman, Esq., Seyfarth Shaw, Two Seaport Lane, Suite 300, Boston, Massachusetts 02210-2028.

Morris J. Bussa

15