**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PATRICK B. BELL | : | CIVIL ACTION NO. |
| | : | 3:01CV01961 (EBB) |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| STOP & SHOP SUPERMARKET | : | |
| COMPANY | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

The Defendant The Stop & Shop Supermarket Company ("Stop & Shop") hereby submits its proposed jury instructions. It expressly reserves the right to modify, supplement or amend its proposed charge.

1. **FUNCTIONS OF COURT AND JURY**

Ladies and gentlemen of the jury, you have listened to the evidence and to the arguments of counsel, and, now, it is time to listen to me as I charge you on the law that applies to this dispute.

Under our system of judicial procedure, you as the jury and I as the judge have two separate functions. It is your function to find what the facts are in this case; with respect to the facts, you and you alone are charged with that responsibility. My function, as the presiding officer of the trial, is to instruct you as to the law to be applied to the facts that you find in order to decide this case. With respect to the law, what I say to you is binding upon you and you must follow my instructions.

It is your duty to follow my instructions and conscientiously apply the law as I give it to

1

you to the facts as you find them in order to arrive at your ultimate verdict. If you should have a different idea of what the law is or even what you feel it ought to be, you must disregard your own notions and apply the law as I give it to you. The parties are counting on having their claims decided according to particular legal standards that are the same for everyone, and those are the standards I will give you and that you must follow. If what counsel said about the law differs from what I tell you, you will dismiss from your minds what they might have said to you. You must decide this case based only on the law that I furnish to you and on the basis of all of the law as I give it to you regardless of the order of my instructions. You must not single out any particular instruction or give it more or less emphasis than any other, but rather must apply all of my instructions on the law that apply to the facts as you find them. However, I repeat, by way of emphasis, that you are to be the sole judge of the facts in this case.

Later in the charge, I might make comments to you on the evidence that was brought out during the trial of the case, but where I do that, such comments merely are to suggest to you what point of law or what controversy I am speaking about. If I refer to certain facts or certain evidence in the case, do not assume that I mean to emphasize those facts or that evidence and do not limit your consideration to the things that I might have mentioned. Likewise, you should attach no importance to it if I should mention one party more than the other. If I should overlook any evidence in the case, you'll supply it from your own recollection; if I incorrectly state anything about the evidence in relation to what you remember, you should apply your own recollection and correct my error.

In the same way, I also point out to you that the remarks of counsel in closing argument

do not constitute evidence.  What any of the lawyers might have said in their respective closing

argument as to the facts or evidence in the case should have weight with you only if their

recollection agrees with your own; otherwise, it's your own recollection of the facts and

evidence that should have weight in your deliberations.

Furthermore, the sums of money and damages articulated by counsel in closing

arguments are not evidence, but only arguments, and the determination of the amount of

damages to be awarded, if any, is solely the function of the jury.

I do not have any preference as to the outcome of this case. I have not meant to convey

by facial expression, critical remark, or tone of voice or in any other way at any time during the

trial any preference or inclination as to how you should decide the facts, and you should not

make any such interpretations. If you believe that I hold an opinion as to the merits of either

party's case, or that I favor either side, or either attorney, or any witness, you are to disregard it.

I may not and I consciously or subconsciously do not involve myself in the merits of the case. If,

in my instructions to you, I refer to one party more than the other, or do anything that in your

mind suggests a preference for one side or the other, it is not done on purpose. My task has been

to apply the rules of evidence and to instruct you as to the law.  It is for you alone to decide on

the outcome of this case.

Concerning the conduct of the trial, let me say that there have been occasions for the

attorneys to confer with the court out of your hearing and, on occasion, the court has excused

you from the room so that a point of law or an objection may be argued.  In such situations, you

should not feel slighted.  Do not speculate on what was being discussed, and do not have any

3

resentment towards the attorney who requested that you be excused. These procedures are necessary in the interests of justice and to expedite a trial.

Also, a few remarks on the evidence. You are to consider only such evidence as was admitted, and if some evidence was given but was stricken from the record, or some evidence was offered and refused, you must not consider it and you must dismiss it from your minds. Nor should any inference be drawn from any questions, the answer to which has been ordered stricken by the court.

Some evidence may have been admitted for a limited purpose only. During the course of the trial, if I told you that certain evidence was being admitted for a limited purpose, you must consider it for that purpose and no other.

It is proper to add the caution that nothing said in these instructions is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Devitt, Blackmar & Wolff, Federal Jury Practice & Instructions: Civil ("Devitt & Blackmar"), § 71.01 (4th ed. 1987 & Supp. 1997).

## 2.    CHARGE AS A WHOLE

I instruct you not to single out any sentence or individual point or instruction in my charge and ignore the others; you are to consider all the instructions as a whole and regard each in the light of all the others.

The order in which the instructions are given has no significance as to their relative importance.

Estelle v. McGuire, 502 U.S. 62, 72 (1991); Magniac v. Thompson, 32 U.S. 348, 390 (1833).

4

3.    **PLEADINGS**

The first matter is what we call the pleadings in the case.  In a civil case, the parties have to set forth in a written statement their version of the facts upon which they base their claim.  The first pleading is the statement of the plaintiff, which the law calls the complaint.  The plaintiff must allege in his complaint all of the issues he intends to raise at trial.  The complaint then limits him as to what claims he can make.  This is intended to prevent the plaintiff from changing his allegations without giving Stop & Shop adequate and reasonable notice.  Any issue that was raised by the plaintiff that was not in his complaint or is no longer in his complaint, I have instructed you to disregard.  At this juncture, I ask you to pay careful attention to my instructions to avoid prejudice to either party.

In this case, the plaintiff, Patrick Bell, claims that he suffered damages because the defendant, Stop & Shop, terminated his employment purportedly because of his race.  Mr. Bell claims that Stop & Shop's reasons for terminating his employment—that is, he violated Company policy purportedly by sleeping on the job—is a pretext for discrimination.  Mr. Bell claims that Stop & Shop did not fire other similarly situated employees who are not African-American for sleeping on the job.

The second pleading, filed by Stop & Shop, is what the law calls an answer.  An answer is a written paper answering the allegations of the complaint.  Stop & Shop may admit some of them, or they may deny some or all of them.  In this case, Stop & Shop has denied each of the plaintiffs' allegations.  Furthermore, Stop & Shop claims that it fired Mr. Bell for sleeping on the job.  Stop & Shop argues that its practice is to discharge each and every employee who is found

sleeping on the job—regardless of that employee's race.

Ultimately these written pleadings lead to contested questions of fact that are the factual issues in the case. Those disputed allegations of fact are what the court and the jury are to try. Fed. R. Civ. P. 7 and 8.

## 4.    FILING OF A LAWSUIT

Ladies and Gentlemen, I must remind you that the mere filing of a lawsuit containing several allegations or claims against another person or a corporation is proof of nothing. And you must not draw any inference from the fact that a lawsuit was filed. To decide whether a case has been proved in accordance with all of the requirements of law on which I will instruct you, you must look to the evidence, for it is from the evidence that you must determine whether the plaintiff has or has not proven his case. Your verdict must be based absolutely and solely upon the evidence presented to you during the trial of this case.

## 5.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of evidence from which a jury can properly find the truth as to the facts of the case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the inferences that may be drawn reasonably and logically from the proven facts.

Let me give you an example of what I mean by direct evidence and circumstantial evidence. If you're looking out a third floor window and you see smoke rising outside the window, that's direct evidence that there is smoke outside. It is also circumstantial evidence that there is a fire of some sort below the window.

As a general rule, the law makes no distinction between direct and circumstantial

6

evidence. The law simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial. Thus, both direct and circumstantial evidence are permissible evidence and each type should be treated equally. In your consideration of the evidence, you are not limited to the bald statements of the witness, that is, the exact words that they use. On the contrary, you are permitted to draw from facts that you find to have been proven such reasonable inferences as seem justified in the light of your experience. While you may make inferences and rely on circumstantial evidence, you should be careful not to resort to sympathy, guesswork or speculation or conjecture—under the guise of relying on circumstantial evidence—to determine the facts in the case.

U.S. v. Yousef, 327 F.3d 56, 132 (2d Cir. 2003); Tolbert v. Queens College, 242 F.3d 58, 67 (2d Cir. 2001).

6.    **BURDEN OF PROOF – CIVIL**

As a general matter, in civil actions such as this, the plaintiff bears the burden of proof. Thus, the burden is upon the plaintiff, Patrick Bell, to prove his cause of action. The defendant, Stop & Shop, does not have to present evidence to disprove the plaintiff's claims. Mr. Bell has the burden of proving every essential element of the case by a preponderance of the evidence. I will review those elements with you in one moment. The law also requires the plaintiff to do more than raise the possibility in your mind that a fact or issue alleged by the plaintiff exists. If you do not find that a fact or issue alleged by the plaintiff has been proved by a fair preponderance of the evidence, you are not to consider this fact or issue as proof in reaching your verdict.

Furthermore, the burden of proof imposed by the law upon the plaintiff requires that you

7

remove from your consideration such matters as are merely guesses or speculation. You are not at liberty to surmise or speculate or guess as to the material facts in this case.

## 7.    STANDARD OF PROOF – PREPONDERANCE OF THE EVIDENCE

In order to meet his burden of proof, the plaintiff must satisfy you that his claims on an issue are more probable than not. You may have heard in criminal cases that proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case, and you are not deciding criminal guilt or innocence. In civil cases such as this one, a different standard of proof applies. The party who asserts a claim has the burden of proving it by a fair preponderance of the evidence, that is, the better or weightier evidence must establish that, more probably than not, the assertion is true. In other words, if the evidence is so evenly balanced that you are unable to say that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

This is not determined necessarily by the greater number of witnesses produced by a party, but it means that the evidence on behalf of the party on whom the burden rests must have greater weight in your judgment, that is, greater probative value. The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in this case, or who may appear to have some knowledge of the matters at issue in this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case. One piece of believable evidence may weigh so heavily in your mind as to overcome a multitude of less credible evidence. The weight to be accorded each piece of evidence is for you to decide.

8

As an example of what I mean, imagine in your mind the scales of justice. Put all the credible evidence on the scales regardless of which party offered it, separating the evidence favoring each side. If the scales remain even, or if they tip against the plaintiff, Patrick Bell, then he has failed to establish that assertion and you must return a verdict for the defendant, Stop & Shop. Only if the scales incline, even slightly, in favor of the assertion may you find that Patrick Bell has proven the assertion by a fair preponderance of the evidence.

Devitt and Blackmar, §§ 72.01, 73.11; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

## 8.    BURDEN OF PROOF ON DAMAGES

The law places a burden upon the plaintiff to prove facts that will enable you to arrive at the amount of damages with reasonable certainty. While it is not necessary that the plaintiffs prove the amount of those damages with mathematical precision, they are required to present such evidence as might reasonably be expected to be available under the circumstances.

Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc., 755 F.2d 599, 608 (7th Cir. 1985).

## 9.    CORPORATION AS A PARTY

In this case, the defendant, Stop & Shop, is a corporation. This fact must not influence your decision in this case. In the eyes of the law, a corporation is a person and is entitled to the same fair trial at your hands as an individual. Considerations of the size of Stop & Shop or its financial position have no place in this trial. This case in not to be decided on the basis of relative size or wealth. All parties stand equal under the law and are to be dealt with as equals in a court of justice.

Devitt & Blackmar, §§ 71.01; 71.04.

9

10.    **SYMPATHY**

Your verdict must not be influenced by sympathy or prejudice for or against any party in this matter.

O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions: Civil</u> ("O'Malley & Grenig"), § 101.01 (5th ed.2000).

11.    **CREDIBILITY OF WITNESSES**

In weighing the evidence, you may use the tests you would ordinarily use in determining the truth of matters important to you in everyday life.  You shall consider the demeanor of the witnesses on the stand; any interest which they may have in the outcome of the case; any bias or prejudice for or against any party; their opportunity to observe; any reason to remember or forget; the inherent probability of their story; its consistency or lack of consistency; and whether or not their story is supported or contradicted by other credible evidence.  It is not the number of witnesses who testify or the quantity of the evidence that counts, but the nature, quality and accuracy of the evidence that controls.

You should scrutinize carefully all the testimony given, the circumstances under which each witness has testified, and every matter in which the evidence tends to indicate whether a witness is worthy of belief.  Consider each witness' intelligence, motive, state of mind, demeanor and manner while on the stand.  You are the sole arbiter of what testimony is to be believed and what is to be rejected.

You may also bear in mind that if you should find that any witness deliberately has testified falsely on any material point, you may take that into consideration in determining whether he or she has testified falsely on other points.  Simply because you find that a witness

10

has not testified accurately with respect to one fact, does not necessarily mean that he or she is wrong on every other point. A witness may be honestly mistaken on one point of his or her testimony and be accurate on others. But, if you find that a witness deliberately has lied on any material point it is only natural that you should be suspicious of his or her testimony on all points; under those circumstances you may disbelieve his or her entire testimony according to your own sound judgment.

A party does not hold out every witness it presents as worthy of belief, since it rarely has a free choice in selecting them. Accordingly, witnesses do not "belong" to the party who called them; and a party does not vouch for the credibility of every witness it calls.

O'Malley & Grenig, § 101.43.

## 12.    DISBELIEF OF TESTIMONY

While it is your province as the jury to weigh the testimony of the witnesses, I need to caution you that if you reject testimony, you cannot conclude, without more, that the opposite is true. Let me use an example of a case involving a stoplight. The plaintiff claims in his lawsuit that the stoplight was red but the only testimony is by the defendant who says the light was green. If the jury disbelieves the defendant and rejects his testimony that the light was green, then the jury cannot, without more, find that the light was red. There must be evidence presented by the plaintiff upon which the jury can make the finding. Relying on the opposite of disbelieved testimony is improper.

You must be cautious not to infer that the allegations of the plaintiff are correct just because you may discredit some testimony offered by Stop & Shop or others on an issue that the plaintiff has the burden of proving. Again, I am cautioning you that I am not at all indicating

11

that you should disbelieve any of Stop & Shop's testimony or any of anyone else's testimony. It is simply my duty to instruct you that the plaintiff has an obligation to prove each element of his causes of action, and he may not do so by relying on unsupported inferences.

**13.    EXPERT WITNESS**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and/or experience, have become an expert in some area, science, profession or calling, may state their opinion as to relevant and material matters, in which they profess to be an expert, and may also state their reasons for their opinions.

You should consider each opinion received in evidence in this case, and give it such weight, if any, as you may think it deserves. In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in the particular field; the information available to the expert, including the facts the expert had, and the documents or other physical evidence available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the fact, activity and the basis for the opinion.

You should ask yourselves about the methods employed by the expert and the reliability of the result. You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence. Based on all of those things together with your general observation and assessment of the witness, it is then up to you to decide whether or not

12

to accept the opinion. You may believe all, some or none of the testimony of an expert witness. In other words, an expert's testimony is subject to your review like that of any other witness. Devitt & Blackmar, § 72.07 (2d ed. 1970).

## 14.    STIPULATIONS/UNDISPUTED FACTS

Any facts to which the parties have stipulated, either in writing or orally during the course of the trial, you will treat as proven. Similarly, if you have been told in open court that a party has agreed not to dispute certain evidence presented by the other, you will treat that evidence as proven as well. It is still up to you to decide what weight or importance those facts or evidence have, if any, in deciding the issues in the case.

O'Malley & Grenig, §§ 101.47, 101.48, 102.10.

## 15.    USE OF DEPOSITION

There has been mention of, and testimony concerning, the role of depositions in the trial process. Our court rules, state statutes and long and customary trial practice provide for a procedure whereby parties and witnesses may be questioned prior to trial under oath in the presence of a court reporter. Each party has an opportunity to question the witnesses. Depositions, as prior sworn testimony of the witness, may be used at trial to refresh the witness' recollection as to prior facts. Depositions may also be used to impeach the credibility of a witness where it appears that his or her testimony at trial differs from his or her prior testimony during a deposition.

O'Malley & Grenig, § 105.02.

## 16.    OBJECTIONS BY COUNSEL

A trial is governed by rules of evidence. It is my duty to apply these rules to the

13

testimony and exhibits offered by the parties to determine if that evidence should be admitted for you to consider. Lawyers have the right and sometimes the obligation to object to evidence that is offered and seek a ruling as to the admissibility of that evidence under the rules. You should not hold it against a lawyer, or the party he or she represents, if the lawyer objects to evidence or moves to strike evidence, regardless of the judge's ruling. Just because evidence is admitted after an objection, you are not required to treat that evidence as true, but you should weigh and consider it in the same way as other evidence. You should not infer from my rulings on evidence that I favor or disfavor any party or lawyer; the court is neutral and is merely enforcing the rules of evidence so as to assure a fair trial. Do not speculate as to what the answer would have been had I not sustained an objection and do not place any emphasis on a piece of evidence merely because I overruled an objection as to it.

O'Malley & Grenig, § 101.49.

## 17.    BUSINESS JUDGMENT CANNOT BE SECOND GUESSED

Just as your verdict must not be premised on sympathy, you also must not substitute you judgment for Stop & Shop's judgment. Under the law, an employer is entitled to make decisions regarding its work force, such as the decision to discharge employees. The wisdom, correctness and justification for such decisions are not subject to your review. Instead, your concern here is whether the plaintiff has satisfied his burden of proof on his claims.

In considering Stop and Shop's explanation of its decision to terminate Mr. Bell's employment, you are not required to, and must not, decide whether you agree with the Company's decision. The Company is entitled to exercise its management discretion and make its own judgment in these matters. You should note that there is no legal requirement to offer

14

alternative work arrangements to employees. The issue for you to determine here is only whether the plaintiff has carried his burden of proof on each of his claims. The wisdom of Stop & Shop's decision is not before you and may not be second-guessed by you. Simply put, it is <u>not</u> your role to decide whether Stop & Shop treated Mr. Bell fairly or unfairly; your sole responsibility is to decide whether the plaintiff has sustained his burden of proof on each of his claims.

Your decision in this case cannot be influenced by whether you personally agree or disagree with the employment decisions made by Stop & Shop with respect to the plaintiff. An employer has the right to take those steps it feels are necessary to run its business, so long as it makes these decisions without violating the law as I will instruct you.

<u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1116-117 (2d Cir . 1988); <u>Meiri v. Dacon</u>, 759 F.2d 989, 995 (2d Cir.), <u>cert. denied</u>, 474 U.S. 829 (1985); <u>Graefenhain v. Pabst Brewing Co.</u>, 827 F.2d 13, 20 (7th Cir. 1987).

## 18.    AT WILL EMPLOYMENT

In the absence of a specific contract, every employment relationship is "at will." The plaintiff did not have a contract promising employment with Stop & Shop for any particular length of time; accordingly, he was employed "at-will." This means that the plaintiff was free to terminate his employment relationship with Stop & Shop at any time. Similarly, Stop & Shop also was entitled to terminate the plaintiff for any reason or for no reason, provided only that the reason was not otherwise prohibited by law. An employer also may change the terms and working conditions of employment of an at-will employee, such as reporting structure, schedule, job position, or salary, without violating the law so long as the reason for the change is not otherwise unlawful. Therefore, Stop & Shop was entitled to change aspects of the plaintiff's job,

15

including the reporting structure and job duties, provided that the change was not otherwise unlawful.

## 19.  RACE DISCRIMINATION/GENERALLY

### a.  Nature of the Action

Mr. Bell has made claims under the Title VII, the Federal Civil Rights statute, and the Connecticut Fair Employment Practices Act, which prohibit employers from discriminating against employees in the terms and condition of their employment because of the employee's race.

Specifically, Mr. Bell claims that Stop & Shop terminated his employment because of his race. Stop & Shop denies that it discriminated against Mr. Bell in any way and further asserts that it terminated Mr. Bell's employment because he violated Stop & Shop policy by sleeping on the job.

### b.  Essentials of Plaintiff's Claim

In order for Mr. Bell to establish his claims against Stop & Shop, he has the burden of proving by a preponderance of the evidence that Stop & Shop had a discriminatory purpose or motive in that Stop & Shop's actions were, more likely than not, motivated by Mr. Bell's race.

In order for Mr. Bell to recover on his claims against Stop & Shop, Mr. Bell must prove that Stop & Shop intentionally discriminated against him. That is, Mr. Bell must prove that his race was the motivating factor in Stop & Shop's decision to terminate Mr. Bell's employment.

Direct evidence would include statements showing a discriminatory motivation for Stop & Shop's treatment of Mr. Bell. Indirect or circumstantial evidence would include proof of a set of circumstances sufficient to create a reasonable inference that race was the motivating factor in

16

Stop & Shop's decision to terminate Mr. Bell's employment.

Your verdict must be for Mr. Bell and against Stop & Shop if all of the following have been proved by a preponderance of the evidence:

(1)    Stop & Shop terminated Mr. Bell's employment; and

(2)    Mr. Bell's race was the motivating factor in Stop & Shop's decision.

The mere fact that Mr. Bell is African-American and was terminated from his employment is not sufficient, in and of itself, to establish Mr. Bell's claim under the law.

O'Malley & Grenig, §§ 170.01, 170.20, 170.31; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Newsome v. Berman, No. 01-7845, 2001 U.S. App. LEXIS 25149, *4-5 (2nd Cir. Nov. 14, 2001); Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994); Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Levy v. Comm'n on Human Rights and Opportunities, 236 Conn. 96, 107-108 (1996).

## 20.    PLAINTIFF'S BURDEN OF PROVING DISCRIMINATION

You should keep in mind that the law is designed so that all employees are treated the same, irrespective, for example, of their race. There are, of course, many ways in which an employer might treat an employee in a manner that you might consider unfair or improper. Stop & Shop is not required to prove that it made a fair or correct business decision with which you agree. You might conclude that the reason Stop & Shop terminated the plaintiff's employment was unsound or even absurd, but if that reason is not discriminatory, the plaintiff cannot prevail. The plaintiff is entitled to relief only if you are satisfied that he has proven by a preponderance of the evidence that Stop & Shop discriminated against him not for any legitimate business reason, but because of his race. In order to prove a claim for discrimination, the plaintiff must prove to you by a preponderance of the evidence that Stop & Shop intended to discriminate against him,

17

and that but for the plaintiff's race, Stop & Shop would not have terminated him.  If you decide

that Stop & Shop did not terminate the plaintiff's employment because of his race, then you must

find for Stop & Shop, even if you disagree with the termination decision.

O'Malley & Grenig, §§ 170.20, 170.21, 170.40, 170.41, 170.42; <u>McDonnell Douglas Corp.</u>, 411
U.S. at 802; <u>Holt v. KMI-Continental, Inc.</u>, 95 F.3d 123, 129 (2d Cir. 1996), <u>cert. denied</u>, 117 S.
Ct. 1819 (1997); <u>Chambers</u>, 43 F.3d at 37.

21.    **Discriminatory Animus**

Stop & Shop has stated that it terminated plaintiff's employment because he violated

Company policy by sleeping on the job.  Remember that Stop & Shop does not have to show that

it made a correct business decision with which you agree.  It is not the role of the jury to sit as a

personnel committee, judging the fairness of the defendant's personnel practices.  You may

agree or disagree with Stop & Shop's personnel practices, but if they are not discriminatory, they

are not unlawful.  You may even believe that Stop & Shop's course of action was poor or

erroneous or mistaken, but, again, if they are not discriminatory, they are not unlawful.

Stop & Shop does not have to prove this reason by a preponderance of the evidence.  The

burden of proof remains with the plaintiff at all times.  Stop & Shop only has to articulate, or put

forth, some evidence of the reason for its decision.  If you believe the Stop & Shop's proffered

reason then you need not go any further.  If you do not believe one or more of Stop & Shop's

reasons then you are permitted, but not required, to find discriminatory animus.  However, if you

do find discriminatory animus, and remember, you are not required to make this determination

even if you do not believe one or more of Stop & Shop's stated reasons, then you must also

determine whether discriminatory animus was the determinative cause of the plaintiff's

termination.

18

O'Malley & Grenig, §§ 170.21, 170.22, 170.31, 170.32; McDonnell Douglas Corp., 411 U.S. at 802; McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001); Tarshis v. Riese Org., 211 F.3d 30, 37 (2d Cir. 2000); Holt, 95 F.3d at 129; Chambers, 43 F.3d at 37.

**22.    Causation**

In order for animus to be determinative cause, plaintiff must prove that "but for" his race, Stop & Shop would not have terminated his employment.  In other words, Stop & Shop terminated him because of his race.

The plaintiff is not required to produce direct and explicit evidence of a discriminatory motive.  He may seek to prove discrimination indirectly.  A plaintiff can prove that an employer's stated reason was a pretext for discrimination in different ways.  For example, the plaintiff could prove pretext if he could show that Stop & Shop treated people who were similarly situated to him in all relevant respects, without any significant differences in circumstance, and who were not African-American, differently than the plaintiff.  Two employees may not be similarly situated where, for example, they are employed in different functions or have different rates of compensation.  The mere fact that non-minorities remained employees of Stop & Shop when the plaintiff was terminated is not sufficient to prove that the plaintiff was discriminated against.

It is not your role to act as a personnel manager for Stop & Shop or to substitute your judgment for the decision-makers' judgment in this case.  You may believe that the reason for the plaintiff's termination was unsound or even absurd, but if the reason is not discriminatory and if the plaintiff does not prove it is a pretext for discrimination, the plaintiff cannot prevail. Thus, if the plaintiff has not proven by a preponderance of the evidence that the explanations for terminating his employment were a pretext for discrimination, then you must find for Stop &

19

Shop.

The plaintiff bears the ultimate burden of proving that discrimination was the determinative factor motivating Stop & Shop's decision to terminate his employment. If you find that Stop & Shop terminated the plaintiff's employment for reasons unrelated to the fact that the plaintiff is African-American, then the plaintiff has not proven his case. In other words, the plaintiff must prove that Stop & Shop would not have terminated him if not for his race. If the plaintiff has not made this showing, you must find for Stop & Shop.

You may determine that the plaintiff's race was all or part of the reason for Stop & Shop's decision. When there is more than one reason for the defendant's action and one of the reasons is discrimination, the defendant is said to have "mixed motives." In a "mixed motives" case, the plaintiff can prevail only if he proves by a preponderance of the evidence that his race was a *determinative factor* in the defendant's decision.

Even if the plaintiff has proven that discrimination was a determinative factor in Stop & Shop's decision, he still can not prevail if Stop & Shop proves that it would have reached the same decision regardless of the plaintiff's race. In other words, if Stop & Shop proves by a preponderance of the evidence that it would have terminated the plaintiff, even if he had not been African American, you must find for Stop & Shop.

O'Malley & Grenig, §§ 170.40, 170.41, 170.42; Price Waterhouse v. Hopkins, 490 U.S. 228, 252, 258 (1989); Hargett v. Nat'l Westminster Bank, USA,, 78 F.3d 836, 840 (2d Cir.), cert. denied, 117 S. Ct. 84 (1996); Cabrera, 24 F.3d at 382; Gehring v. Case Corp., 43 F.3d 340, 344 (7th Cir. 1994).

**23.    Race Discrimination/Damages – Causation**

To award damages, the plaintiff must have proven by a preponderance of the evidence

20

that the harm he complains of was caused by unlawful conduct by Stop & Shop rather than any

other cause. You may not award damages based on speculation, but should only reasonably

compensate the plaintiff for actual losses, if any, he has incurred as a result of unlawful conduct,

if you find Stop & Shop engaged in any unlawful conduct. Thus, you are not to consider any

mental anguish that plaintiff has suffered as a result of other distressing factors in his life.

O'Malley & Grenig, § 170.60; Wade v. Orange County Sheriff's Office, 844 F.2d 951, 955 (2d
Cir. 1988).

### 24.  **Race Discrimination/Damages - Back Pay**

If you find that the plaintiff has proven his claim that he was unlawfully discharged, then

you should consider whether he is entitled to "back pay." Back pay is made up of any salary that

he would have earned at Stop & Shop had his employment not been terminated. Again, you

must find that the loss the plaintiff claims he suffered was actually caused by unlawful conduct

of Stop & Shop rather than any other cause.

To calculate back pay, you should consider the amount of earnings that the plaintiff

would have received, but did not receive because of unlawful discrimination, between the date of

his separation from Stop & Shop and the date he either did or should have accepted comparable

new employment. The amount of back pay thus must take into account any money he did

receive or should have received from his new employment. You also are required to deduct any

amounts earned by him since he discontinued working for defendant, including any

unemployment or other benefits which he may have received.

O'Malley & Grenig, § 170.61.

21

25.    **Race Discrimination/Damages - Front Pay**

Front pay refers to salary and benefits that the plaintiff would have earned from the time of this trial forward, had his employment not been terminated. The plaintiff has a duty to mitigate his damages by seeking comparable work, and so you also must take into account any salary and benefits he did receive or should have received from new employment. You may not speculate or guess in making any front pay award. Rather, you should make reasonable estimates concerning the amount of future salary and benefits, and the plaintiff should not be made more than whole. In other words, the plaintiff must prove these damages with reasonable certainty, and he must prove that the loss he claims she suffered was actually caused by unlawful conduct by Stop & Shop rather than any other cause.

To determine front pay, then, you should consider and weigh the following factors:

(1)    The amount of salary and benefits that the plaintiff would have received between now and a reasonable future date, if he would have remained at Stop & Shop;

(2)    The amount of earnings that the plaintiff probably would receive from another employer or employers until a reasonable future date. This would, of course, reduce any front pay award to the plaintiff. It is Stop & Shop's burden to prove that the plaintiff can reasonably be expected to earn money in the future to offset any losses.

(3)    The possibility of inflation and wage increases in the future.

(4)    The period of time involved. For the greater period of time, the less likely

22

it is that any loss of future earnings can be demonstrated with any degree

of certainty or can reasonably be attributed to any unlawful conduct by

Stop & Shop.

An award of front pay then must be reduced to its present value. By reducing an award

of front pay it its present value, you avoid overpaying the plaintiff. For example, if you wanted

to award someone $100 for a loss you find she is reasonably likely to sustain in ten years, you

would not simply award her $100. Rather, you would award her a lesser sum, which if

reasonably invested and earning interest, would grow to $100 in ten years.

O'Malley & Grenig, § 170.62.

## 26.    Race Discrimination/Mitigation

I have mentioned that the plaintiff has a duty to mitigate his damages. What I mean by

this is that any person who claims damages as a result of an alleged wrongful act on the part of

another has a duty under the law to "mitigate" those damages—that is, to take advantage of any

reasonable opportunity he may have had under the circumstances to reduce or minimize the loss

or damage by seeking alternate employment. In addition, he has a duty to make a reasonable and

good faith effort to maintain that new employment. Any recovery of damages is cut off when the

person leaves a comparable employment position, either voluntarily or because of her own

misconduct, such as violating the new employer's rules.

Stop & Shop claims that the plaintiff failed to mitigate his damages by seeking out

comparable employment after his employment at Stop & Shop ended, and failing to make a good

faith effort to maintain employment once secured. Stop & Shop has the burden to prove by a

preponderance of the evidence that the plaintiff failed to seek out or take advantage of an

23

employment opportunity that was reasonably available to him under all the circumstances shown by the evidence, or that the plaintiff failed to make a good faith and reasonable effort to maintain any employment that he did accept.  If you find that Stop & Shop has proven that the plaintiff failed to take reasonable steps to find and maintain comparable new employment, then you should reduce the amount of plaintiff's damages by the amount he could have reasonably realized if he had taken advantage of such opportunities.

O'Malley & Grenig, § 170.65.

## 27.    Race Discrimination/Punitive Damages

In addition to compensatory damages, plaintiff seeks punitive damages for Stop & Shop's alleged discrimination against him based upon his race.  If you find that Stop & Shop intentionally discriminated against the plaintiff, you may consider whether punitive damages are warranted either to punish Stop & Shop or to deter future acts of illegal discrimination by Stop & Shop.  Punitive damages are different from compensatory damages.  Unlike compensatory damages, which compensate the victim for the harm he has actually suffered, punitive damages are an extraordinary remedy.  They are intended to punish a defendant who has acted outrageously because of Stop & Shop's evil motive or reckless indifference to the rights of others.  Punitive damages may be appropriate if you find Stop & Shop's conduct warrants condemnation and deterrence.

You must limit your deliberations to Stop & Shop's alleged discrimination against the plaintiff based upon his race.  If, but only if, you find that the plaintiff has proven that Stop & Shop acted egregiously, wantonly or maliciously, will you consider the amount of punitive damages necessary to punish Stop & Shop or to deter others.  However, even if you find that

24

punitive damages are possible, you do not have to award punitive damages.

In determining an amount, you should consider the following questions: How offensive was the conduct? What amount is needed to prevent future repetition? Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason. You must not be influenced by passion, prejudice or sympathy for, or dislike of, any party in the case. Look at all of the evidence, all of the circumstances, and remember that the keystone of punitive damages is the conduct of the offender. If you assess punitive damages at all, then the plaintiff must have proven that Stop & Shop engaged in an outrageous discriminatory practice with evil intent or malice, or with reckless or callous indifference to the plaintiffs' protected rights.

O'Malley & Grenig, § 170.64; <u>Kolstad v. Am. Dental Assoc.</u>, 527 U.S. 526, 536 (1999); <u>Zimmerman v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 384 (2d Cir. 2001); <u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 235 (2d Cir. 2000).

## 28.  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

The plaintiff, Patrick Bell, also claims Stop & Shop intentionally inflicted emotional distress upon him by terminating his employment for sleeping on the job. The tort of intentional infliction of emotional distress has been defined as follows:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

A cause of action for emotional distress does not exist to redress every instance of dissatisfaction in the workplace. Generally, liability can be found for intentional infliction of

25

emotional distress only when telling the facts to an average member of the community would lead him or her to conclude that the conduct is outrageous.

You must consider the social context as well as the relationship between the parties as important factors in weighing the evidence before you. The work environment is one in which employees must expect to be evaluated, not always favorably. Therefore, questioning, criticizing, and/or discharging an employee is not necessarily outrageous conduct. The work culture in some situations may include a degree of teasing and taunting that in other circumstances might be considered cruel and outrageous. But, though the social context may make some questionable conduct tolerable, the same social context may make other acts especially outrageous.

Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259 (4th Cir 1989); Pratt v. Brown Machine Co., 855 F.2d 1225 (6th Cir. 1988); Restatement (Second) of Torts § 46 comment d (1977); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 12, at 18 (5th ed. Supp. 1989).

### a. **Elements of Liability**

For Mr. Bell to recover on his claim for intentional infliction of emotional distress, he must prove by a preponderance of the evidence each of the following four elements against each defendant:

(1)      that Stop & Shop intended to inflict emotional distress upon Mr. Bell, or

that Stop & Shop knew or should have known that the likely result of his

conduct would be Mr. Bell's emotional distress;

(2)      that Stop & Shop's conduct was extreme and outrageous;

(3)      that Stop & Shop's conduct was the proximate cause of Mr. Bell's

26

emotional distress; and

(4)          that Mr. Bell's emotional distress was severe.

You may determine from your consideration of all of the evidence that Mr. Bell has proved each of these elements against each defendant by a preponderance of the evidence. If you determine that each element of Mr. Bell's claim for intentional infliction of emotion distress has been proved against Stop & Shop, then Stop & Shop is liable, and your verdict should be for the plaintiff and against Stop & Shop. If so, you must consider the question of damages, upon which I will instruct you later.

After considering all of the evidence, you may conclude that the plaintiff has not proved any one or more of these elements by a preponderance of the evidence. If you determine that any element of the plaintiff's claims for intentional infliction of emotional distress has not been proven against Stop & Shop, then Stop & Shop is not liable. Your verdict would then be against the plaintiff and for Stop & Shop.

Restatement (Second) of Torts § 46 (1977).

**b.  Extreme and Outrageous**

The plaintiff, Mr. Bell, must prove by a preponderance of the evidence that Stop & Shops' conduct was extreme and outrageous. In special situations of extreme misconduct, recovery for intentional infliction of emotional distress is allowed. However, Stop & Shop is liable only for extreme and outrageous conduct exceeding all bounds usually tolerated by decent society, of a nature that is calculated especially to cause, and does cause, mental distress of a very serious kind.

27

You may only find Stop & Shop liable to the plaintiff if you determine that the conduct of Stop & Shop toward the plaintiff was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his or her resentment against Stop & Shops and lead him to exclaim "Outrageous."

You cannot find Stop & Shop liable if you determine that only mere insults, indignities, threats, annoyances, petty oppressions or other trivialities occurred. The plaintiff necessarily must be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. If you find that Mr. Bell has not proven that Stop & Shop's conduct was so outrageous and so extreme as to go beyond all possible bounds of decency, then you must find for Stop & Shop.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 12, at 60-61 (1977); Restatement (Second) of Torts § 46 comment d (1977).

### c. Intentional and Reckless

If you find that Stop & Shop's conduct was extreme and outrageous beyond all bound of possible decency, that is not, however, the end of your necessary deliberations. You must then decide whether Stop & Shop acted for the purpose of causing Mr. Bell severe emotional distress or knew or should have known that emotional distress was a likely result of their conduct. If you do not find that Stop & Shop acted intentionally or recklessly, then you must find for Stop & Shop on this claim.

28

Restatement (Second) of Torts § 46 comment i and § 500 comment a (1977);  see also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 12, at 64-65; 4 Stuart M. Speiser et al., The American Law of Torts § 16:13, at 1030-31 (1987 & Supp. 1992).

### d. Severe Emotional Distress

You must determine whether the plaintiff, Patrick Bell, suffered emotional distress intentionally inflicted by Stop & Shop and whether that emotional distress was severe.  Stop & Shop is liable only if the emotional distress is what a reasonable person of ordinary sensibilities would experience under the circumstances.

You must decide whether the emotional distress for which the plaintiff seeks relief is reasonable and justified under the circumstances.  Mental distress, to be actionable, must be some actual distress of mind flowing from the real circumstances of life.  Mental suffering over supposed or imaginary conditions that do not last should not be the basis of recovery.  Stop & Shop has no liability where the plaintiff suffered exaggerated and unreasonable emotional distress unless it results from a peculiar susceptibility to such distress of which Stop & Shop had knowledge.

The distress must be so severe that no reasonable person could be expected to endure it.  The intensity and the duration of the distress are factors to be considered in determining its severity.  "Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like.  It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that liability arises."

38 Am. Jur. 2d "Fright, Shock and Mental Disturbance" § 7 (1968); Restatement (Second) of Torts § 46 comment j (1977).

29

**e.  Proximate Cause**

The plaintiff, Patrick Bell, must prove by a preponderance of the evidence that the severe emotional distress of which he complains proximately was caused by, or was the result of, Stop & Shop's intentional acts.

38 Am. Jur. 2d "Fright, Shock, and Mental Disturbance" § 23 (1968).

**f.  Plaintiff's Burden of Proof**

To prevail on each of his claims for intentional infliction of emotional distress, Mr. Bell must establish all of the necessary elements by a preponderance of the evidence.  Preponderance of the evidence means evidence that is more convincing than the evidence introduced to support the other side of the same matter.  If the evidence is so evenly balanced that you are unable to say that the evidence on either side of the issue is more convincing, your finding on that issue must be against the plaintiff.  If you do not find that Mr. Bell proved each of these elements by a preponderance of the evidence, then you must find for Stop & Shop.

Devitt & Blackmar, § 81.05.

**29.  DAMAGES/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

If you find the plaintiff has proven all the elements of intentional infliction of emotional distress as I earlier set them forth to you, you may award damages for it.  Again, the damages you give rest in your sound judgment, and are to represent fair, just and reasonable compensation for the plaintiff's injuries.  Where mental or emotional distress is proved, the court cannot give you any rule by which to measure the specific amount of damages resulting from such an injury.  This matter is left to the conscience, good sense, and sound judgment of the jury.  You should not act unreasonably through bias, passion, or sympathy and should instead exercise common

30