UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICK B. BELL | : CIVIL ACTION NO. |
| | : 3:01CV01961 (EBB) |
|       Plaintiff, | : |
| VS. | : |
| | : |
| STOP & SHOP SUPERMARKET | : January 12, 2004 |
| COMPANY | : |
| | : |
|       Defendant. | : |

FILED

## DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM SEEKING COMPENSATORY AND PUNITIVE DAMAGES

Defendant Stop & Shop Supermarket Company ("Stop & Shop"), moves this Court *in limine* for an order precluding plaintiff Patrick Bell ("Bell") from introducing witnesses to support his claims of emotional distress, or referring at trial to either (i) any evidence relating to his allegations of physical or psychological injury, emotional distress, anguish or loss of enjoyment of life, or (ii) his claim for punitive damages.

At his deposition, Bell testified that he had never seen a medical health care provider as a result of his alleged emotional distress (Bell Tr. at 172-177)[1] and that he had never taken any medication to treat his alleged emotional distress (Bell Tr. at 174). Accordingly, Stop & Shop moves that this Court preclude Bell from introducing evidence and from seeking compensatory and punitive damages on the basis of such claims.

In addition, Stop & Shop moves that this Court preclude Bell from seeking punitive damages, because the record is devoid of any evidence that Stop & Shop engaged in any discriminatory practices with malice or necessary indifference so as to warrant the consideration of punitive damages. In fact, Stop and Shop maintains a policy against discrimination and harassment. Accordingly Stop & Shop moves that this court preclude bell from seeking punitive damages on the basis of his claims.

---

**ORAL ARGUMENT REQUESTED**

[1] Relevant excerpts from the transcript of Mr. Bells June 2002 deposition are attached hereto as exhibit A.

BO1 15620533.1

## ARGUMENT

1. **This Court Should Preclude Bell From Introducing Evidence As To His Claim for Emotional Distress, Physical and Psychological Injury**

Bell's damages are clearly limited to "garden variety" emotional distress damages. The manifestations of his emotional distress are limited to headaches, stress, "spells," and maybe gas. (Bell Tr. at 172-177 ). By his own admission, Bell has not consulted with a physician regarding these purported conditions except for the problems with gas. (Bell Tr. at 172-177). He has not taken any medications for his condition. (Bell Tr. at 174). Courts in this Circuit regularly find that emotional distress claims are "garden variety" where medical attention is not required. See Epstein v. Kalvin-Miller Int'l, Inc., 139 F. Supp.2d 469, 481 (S.D.N.Y. 2001) ("[P]laintiff's emotional distress claim is not of the garden variety, because plaintiff's distress caused him to seek medical treatment."). See also Jessamy v. Ehren, 153 F. Supp.2d 398, 400-01 (S.D.N.Y. 2001) ("Emotional distress damages claims which do not require medical attention have been characterized as 'garden variety.'"). This Court should not permit Bell to (i) present testimony from his family members as to his physical and mental well-being or (ii) opine self-servingly as to the causes for his alleged medical conditions because this would be gravely prejudicial to Stop & Shop.

Accordingly, Stop & Shop respectfully requests that this Court preclude Bell and his family members from testifying or introducing any other evidence of his physical or emotional condition, and further preclude him from seeking compensatory damages on the basis of such claims.

2. **This Court Should Preclude Bell Should From Seeking Punitive Damages**

It is clear from the record that Stop & Shop maintains a strict policy against discrimination and harassment. Stop & Shop's Anti-Harassment Policy (attached hereto as Exhibit B) states:

> "Stop & Shop is committed to providing a workplace free of unlawful harassment of any kind by anyone including associates, vendors and customers. Stop & Shop

2

BO1 15620533.1

does not tolerate harassing conduct that affects employment conditions, interferes unreasonably with an individual's work performance, or creates an intimidating hostile or offensive work environment...."

Stop & Shop's policy also provides detailed examples of prohibited conduct. Stop & Shop's policy concludes:

> "Harassment" means unwelcome conduct verbal or physical that is based on a characteristic protected by law, such as sex race color ancestry, national origin, religion, age disability marital status genetic information or sexual orientation. Such conduct may include but is not limited to: verbal abuse or insults about, directed t or made in the presence of and individual or group described above.........[more here]

Stop & Shop disseminates its Anti-Harassment Policy once a year and sends it to all of its employees in the mail or with their paychecks. The Company also posts the policy near the time clock in the employee break room. The policy even provides a procedure for reporting inappropriate conduct. Stop & Shop also disseminates its Equal Employment Opportunity Policy (attached hereto as Exhibit C) annually, and this policy reiterates many of the points in its Anti-Harassment Policy.

. Each employee attends an orientation when he is hired and he receives the Stop & Shop Warehouse Rules. During the orientation program, each employee is provided with detailed materials regarding the Company's anti-harassment policy and the procedure for registering Complaints of discrimination and harassment. Employees receive an Acknowledgement that they have received the Shop Rules and have attended the Orientation session. Mr. Bell admits that he attended the three- hour Orientation Session and he received a copy of Stop & Shop's policies at that time. (Bell Tr. at 49-53). Bell recalls that he signed his Acknowledgement of Receipt on November 2, 1989. (See Acknowledgement attached hereto as Exhibit D). Bell has even admitted that he knew to whom he should complain if he felt that he had been harassed or discriminated against. (Bell Tr. at 69).

In addition, Stop & Shop Supervisors attend diversity training periodically. The decision-makers in the instant case, Ed Ruddy, Curt Miller, Rod Roddy had all attended Stop & Shop's diversity and anti-discrimination training prior to Bell's termination in September 2000.

There is no evidence in the record to suggest that Stop & Shop engaged in any "egregious conduct" or that Stop & Shop acted with "malice" or with "reckless indifference." As such, Bell's claims do not rise to the level necessary to warrant an award of punitive damages. Kolstad v. American Dental Ass'n, 527 U.S. 526, 535-36, 119 S. Ct. 2118, 2124 (1999).

To recover such damages, a plaintiff must show that his employer --as opposed to the decision-makers— acted with "malice or with reckless indifference to his federally protected rights." 42 U.S.C. section 1981a(b)(1). Thus, if the employer has an overall practice of making "good faith efforts to comply with" anti-discrimination laws, it "may not be held vicariously liable" for punitive damages. Kolstad, 527 U.S. 545. (citation omitted); See Hardy v. New DN Co., 1997 U.S. Dist. Lexis 16912, at *60 (S.D.N.Y. Oct.,24, 1997) (applying analysis to 1981 claim); Patterson v. P.H.P. Healthcare Corp., 90 F. 3d 927, 942 (5th Cir. 1996) (revering punitive damages award under section 1981).

Bell cannot establish that Stop & Shop acted with reckless disregard for his legally protected rights because of Stop & Shop's substantial efforts to comply with the anti-discrimination laws. Stop & Shop maintains a strict and comprehensive policy against discrimination and harassment. Stop & Shop's policy provides detailed examples of prohibited conduct and a procedure for reporting inappropriate conduct. These policies alone offer ample support for this Court to preclude Bell from seeking punitive damages with respect to his claims of discrimination. Kolstad, 527 U.S. at 544 (the existence of a written non-discrimination policy instituted in goof faith goes a long way towards dispelling any claim about an employer's reckless or malicious state of mind). This point is only bolstered by Stop & Shop's good faith efforts to disseminate its policies once a year to all employees and provide diversity training to its managers and supervisors. Accordingly, pursuant to the Supreme Court's holding in Kolstad, this Court should preclude Bell from making any claim for punitive damages at trial.

4

BO1 15620533.1

## CONCLUSION

For the foregoing reasons, Stop & Shop respectfully requests that the Court preclude Bell from (i) introducing or referring to at trial any evidence relating to his allegations of physical or psychological injury, emotional distress, anguish or loss of enjoyment of life or (ii) seeking punitive damages, and that no reference, direct or indirect, be made thereto at trial.

SEYFARTH SHAW

By: /s/ Lynn A. Kappelman
Lynn A. Kappelman, Esq.
Damian W. Wilmot, Esq.
World Trade Center East
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800
Attorneys for Defendant
Stop & Shop Supermarket Company

5

BO1 15620533.1